|||
|---|---|
| | UNITED STATES DISTRICT COURT |
| | CENTRAL DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| GABRIEL S., | ) | Case No. 2:20-cv-01040-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) | |

# I.
# **INTRODUCTION**

On January 31, 2020, plaintiff Gabriel S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of supplemental security income ("SSI"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") improperly rejected a portion of the examining physician's

opinion. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-10; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-5.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated the opinion of plaintiff's examining physician, Dr. Ernest A. Bagner III. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 27 years old on the alleged disability onset date, has a high school equivalency diploma or GED. *See* AR at 333, 379. Plaintiff has past relevant work as a fork lift operator and dump truck driver. AR at 35, 369-70.

On November 3, 2016, plaintiff filed an application for SSI, alleging an onset date of November 3, 2016. *See* AR at 379, 460. Plaintiff claimed he suffered from seizures, which started on about 2013. AR at 335, 379. Plaintiff's application was initially denied on March 21, 2017. AR at 25, 378-93.

Plaintiff requested a hearing, which the ALJ held on January 24, 2019. AR at 328. Plaintiff, represented by counsel, appeared and testified at the hearing. AR at 331-69. The ALJ also heard testimony from Susan Allison, a vocational expert. AR at 369-71. The ALJ denied plaintiff's claim for benefits on February 26, 2019. AR at 37.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since November 3, 2016, the application date. AR at 27.

At step two, the ALJ found plaintiff suffered from the following severe impairments: idiopathic epilepsy/seizure disorder, major depressive disorder with anxiety, and panic disorder without agoraphobia. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 28.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the ability:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant must observe seizure precautions including no ladders, scaffolds, or ropes, no unprotected heights or dangerous moving machinery, no open bodies of water, and no operating a motor vehicle. The claimant is limited to only non-complex routine tasks, no tasks requiring hypervigilence, and no responsibility for the safety of others.

AR at 29-30.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a fork lift operator or dump truck driver. AR at 35.

At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including as a hand packager, cashier II, or assembler of plastic hospital parts. AR at 36. The ALJ accordingly concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 3, 2016 through the date of his decision. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, but the

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Appeals Council denied the request for review on February 21, 2020. AR at 1. Accordingly, the ALJ's decision became the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459 (citations omitted). The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks omitted).

## IV.

## **DISCUSSION**

### A. The ALJ Did Not Err in Discounting Dr. Bagner's Opinion

Plaintiff argues the ALJ erred in rejecting Dr. Bagner's opinion that plaintiff was moderately limited in his ability to interact with the public, co-workers, and supervisors. For the reasons below, the court concludes the ALJ did not err in rejecting that opinion.

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] The regulations distinguish among three types of medical opinion sources: (1) treating sources; (2) examining sources; and (3) non-examining sources. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). Generally, "an examining [source]'s opinion carries more weight than a reviewing [source]'s." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The regulations also give greater weight to opinions that are explained and to the opinions of specialists concerning matters within their expertise over those of nonspecialists. *See Holohan*, 246 F.3d at 1202 (citations omitted); 20 C.F.R. §§ 404.1527(c)(3), 404.1527(c)(5).

The ALJ must provide specific and legitimate reasons, supported by substantial evidence, to reject the contradicted opinions of examining sources. *Lester*, 81 F.3d at 830-31. The opinion of a non-examining source, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

---

[2] The Social Security Administration issued new regulations effective March 27, 2017. All regulations cited in this decision are effective for applications filed prior to March 27, 2017.

Here, plaintiff argues the ALJ erred in adopting the opinion of the state agency consultant, Dr. Robert Liss, over that of the consultative examiner, Dr. Bagner, with respect to whether plaintiff was moderately limited in his ability to interact with the public, co-workers, and supervisors. P. Mem. at 7-9. Plaintiff first argues Dr. Liss did not review the entire medical record, as the ALJ claimed, but instead actually based his opinion solely on his interpretation of Dr. Bagner's examination. Second, plaintiff takes issue with the ALJ's comment that Dr. Bagner's opinion was less persuasive because it was based on a "snapshot" of plaintiff's condition on a certain day. Third, plaintiff claims Dr. Liss did not consider any independent clinical findings not considered by Dr. Bagner. Defendant maintains substantial evidence supports the RFC and the ALJ's assessment of the medical opinion evidence, and argues the ALJ found Dr. Bagner's opinion was not supported by the evidence. D. Mem. at 1-4.

### 1. **Dr. Bagner's Opinion**

Dr. Bagner, a board eligible psychiatrist, conducted a complete psychiatric examination of plaintiff and issued an opinion dated February 27, 2017. *See* AR at 632-35. Dr. Bagner relied on the plaintiff for information about his medical condition and history and did not review any medical records. *See* AR at 632.

At his evaluation, plaintiff complained of depression, crying spells, nervousness, feelings of helplessness, trouble with concentration and memory, and seizures. *See id.* At the time, plaintiff was not seeing a psychiatrist or therapist or taking psychotropic medications. *Id.* But he was receiving treatment for his seizures. *Id.* Plaintiff reported he could cook, read, bathe and dress himself, pay his bills, and handle his own money. AR at 633. He reported a poor relationship with family but a fair relationship with friends. *Id.*

Among other things, Dr. Bagner reported the following observations: Plaintiff was tearful but well developed, well nourished, and cooperative. *Id.* His

body movements were normal but his eye contact was poor. *Id.* His speech was soft in tone and volume, slow, and emotional. AR at 634. He was depressed but his affect was appropriate and there was no psychomotor retardation. *Id.* He did not exhibit abnormal thought processes, thought content, perception, or orientation. *See id.*

Based on his examination, Dr. Bagner concluded, inter alia, that plaintiff's "ability to interact appropriately with the public, co-workers, and supervisors was moderately limited." AR at 635. Dr. Bagner opined that his prognosis was fair with proper treatment. *Id.*

### 2. Dr. Liss's Opinion

Dr. Liss, Ph.D., provided a non-examining opinion on March 20, 2017. *See* AR at 383-86, 389-90. To do so, it appears he reviewed plaintiff's medical and psychiatric history. *See* AR at 383-84. Among other things, he concluded that plaintiff did not have social interaction limitations and had no significant limitations in his ability to "relate to others or otherwise adapt to the requirements of the normal workplace." *See* AR at 390.

### 3. The ALJ's Findings in Question

The ALJ found plaintiff has only a mild limitation in interacting with others. AR at 28. The ALJ concluded that this mild limitation did not require an accommodation in the RFC. AR at 29.

In arriving at this conclusion, the ALJ considered plaintiff's psychiatric history and opinion evidence. The ALJ noted plaintiff's allegations of depression, nervousness, irritability, poor appetite, low energy, and trouble concentrating. *See* AR at 28, 30. The ALJ also considered that plaintiff had been diagnosed with major depressive disorder with anxiety and panic disorder without agoraphobia. AR at 32.

The ALJ determined that plaintiff's statements, concerning the extent to

which his psychiatric symptoms limit his ability to work, were not entirely consistent with the medical evidence and other evidence in the record. AR at 30. For instance, although plaintiff exhibited poor eye contact at his psychiatric consultative examination, he was cooperative and pleasant, and had normal body movements during doctor's visits and examinations. *See* AR at 28-29 (citing AR at 565, 589, 632-37, 736, 756). The ALJ also highlighted that plaintiff's treatment history for mental impairments was very conservative and sparse. AR at 32. Specifically, plaintiff was treated for mental health symptoms from March to December of 2016, at which time he was diagnosed and started on Seroquel. *See id.* (citing AR at 614-17). The record did not reflect any psychotherapy or psychiatric hospitalizations since the alleged onset date. *See* AR at 32-33. The ALJ also noted that plaintiff was able to enjoy fair relationships with friends, although he had poor relationships with his family. *See* AR at 33.

  Moreover, the ALJ noted that plaintiff was able to perform various activities of daily living, including cooking, reading, bathing and dressing independently, and handling his own bills and money. *Id.* The ALJ determined that some of the mental abilities and social interactions required to perform these activities are the same as those necessary to obtain and maintain employment. *Id.*

  The ALJ gave partial weight to the opinions of Dr. Bagner and Dr. Liss. *Id.* Of relevance to the instant dispute, the ALJ agreed with Dr. Liss and disagreed with Dr. Bagner in concluding that the evidence did not support moderate limitations in interacting with others. *See* AR at 34. The ALJ determined that Dr. Liss's opinion with respect to that issue was entitled to more weight because it was based on a review of the entire medical record, whereas Dr. Bagner's opinion was based on a snapshot of plaintiff's abilities on the day of the consultative examination. *See id.*

### 4. The ALJ Properly Discounted Dr. Bagner's Opinion

Plaintiff is correct that Dr. Liss's opinion by itself is insufficient to serve as substantial evidence to discount Dr. Bagner's opinion regarding social functioning limitations. *See Widmark*, 454 F.3d at 1066. But contrary to plaintiff's argument, the ALJ did not rely solely on Dr. Liss's opinion. The ALJ concluded that the totality of the evidence did not support Dr. Bagner's opinion. *See* AR at 34. Although the ALJ's reasoning could have been clearer in some respects, the ALJ identified a total of four reasons why the evidence as a whole did not support limitations on plaintiff's interaction with others.

First, the ALJ found plaintiff's treatment history for mental impairments to be "very conservative and sparse." AR at 32. The ALJ based this conclusion on plaintiff's relatively short mental health treatment from March to December of 2016, and the absence of evidence of psychotherapy or psychiatric hospitalizations since the alleged onset date. *See* AR at 32-33, 605, 611-17. But the ALJ also noted that, during that treatment, plaintiff was treated with Seroquel. AR at 32, 605, 614. "Courts specifically have recognized that the prescription of . . . Seroquel connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." *Johnson v. Colvin*, 2014 WL 2586886, at *5 (C.D. Cal. June 7, 2014) (citations omitted); *see also Green v. Berryhill*, 2018 WL 4291960, at *5-6 (D. Nev. Aug. 20, 2018) (compiling cases supporting the proposition that treatment with Seroquel is aggressive). Accordingly, the first reason provided by the ALJ was neither legitimate nor supported by substantial evidence.

Second, plaintiff testified he is capable of performing various activities of daily living, such as cooking, reading, bathing and dressing independently, and handling his own bills and money. AR at 33 (citing AR at 632-37). The ALJ concluded that some of the social skills required to perform these activities are also

9

necessary to obtain and maintain employment. *Id.* A claimant's ability to perform activities of daily living may serve as a legitimate reason to discount a medical opinion. *Romo v. Berryhill*, 731 F. App'x 574, 577-78 (9th Cir. 2018). The court does not see how being able to cook, read, or bathe and dress independently leads to the conclusion that a claimant has the social skills necessary to obtain and maintain employment. But the ability to handle bills and money and maintain fair relationships with friends does require certain social skills – such as knowing how to communicate with strangers and exhibit socially appropriate behavior – that are also necessary to obtain and maintain employment. Accordingly, the court finds this reason was specific, legitimate, and supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)).

Third, the ALJ noted that claimant was cooperative and alert and exhibited normal body movements, thought processes and content, and orientation to time, person, and purpose during Dr. Bagner's examination. *See* AR at 33 (citing AR at 632-37).[3] Plaintiff also correctly answered questions evidencing an adequate fund of information, insight, and judgment. *Id.* These observations of normal cognitive functioning, however, are not necessarily inconsistent with Dr. Bagner's opinion, especially given his conclusion that plaintiff has only moderate limitations in social interaction. *See Jeffery W. v. Comm'r*, 2019 WL 4167129, at *4 (D. Or. Aug. 31, 2019) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)) ("Plaintiff's normal speech, judgment, and memory do not conflict with Dr. Grandi's assertion

---

[3] In a separate part of his decision, the ALJ noted that plaintiff has also exhibited cooperative and pleasant behavior at other doctor's visits and examinations. *See* AR at 29.

that Plaintiff's psychiatric impairments cause significant limitations in Plaintiff's ability to work."). Thus, this reason to discount Dr. Bagner's opinion is neither legitimate nor supported by substantial evidence.

Fourth, the ALJ found that Dr. Liss's opinion was more consistent with the entire medical record, unlike Dr. Bagner's which "comprised a snapshot of the claimant's abilities on the day of the consultative examination." AR at 34. There is no dispute that Dr. Bagner did not review any of plaintiff's medical records, but the parties do dispute whether Dr. Liss reviewed the entire medical record as the ALJ found.

Contrary to plaintiff's contention, it appears Dr. Liss did review more than Dr. Bagner's opinion in formulating his opinion. *See* AR at 384 (summarizing plaintiff's medical history and treatment notes). ALJs must resolve conflicts between medical opinions, and ultimately formulate an RFC that is consistent with the evidence as a whole. *See Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Although two of the reasons provided by the ALJ for discounting Dr. Bagner's opinion were legally insufficient, the court is not persuaded that the ALJ erred in finding Dr. Liss's opinion to be more consistent with the evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). At least one of the ALJ's other reasons for discounting Dr. Bagner's opinion was legitimate and supported by substantial evidence – i.e., plaintiff's social skills exhibited in daily living activities. Finding that Dr. Liss's opinion regarding social functioning was more consistent with the record was also legitimate and supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of . . . non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other

evidence in the record." (citations omitted)).

In sum, two of the ALJ's reasons for discounting Dr. Bagner's opinion were invalid. But those errors are harmless because the ALJ provided two other specific and legitimate reasons, supported by substantial evidence, to discount the opinion, and those reasons were sufficient without the other two. Accordingly, the court finds the ALJ properly evaluated and discounted Dr. Bagner's opinion.

**B.** **Even If the ALJ Erred in Discounting Dr. Bagner's Opinion, Such Error Would Be Harmless**

Defendant argues that even if the ALJ did not adequately support his decision to discount Dr. Bagner's opinion, any such error would be harmless. D. Mem. at 4. Namely, defendant contends plaintiff could still perform two of the three jobs the ALJ identified at step five, even if the ALJ had included social limitations in his RFC determination. *See id.* Plaintiff asserts that such error would not be harmless because there is no evidence in the record that plaintiff could perform the identified occupations with additional social limitations. P. Mem. at 10.

"A decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation marks omitted). An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks omitted).

Defendant is correct that even if the ALJ had erred in discounting Dr. Bagner's opinion, the error would be harmless. At step five, the ALJ determined plaintiff could perform the jobs of hand packager, cashier II, and assembler of plastic hospital parts. *See* AR at 36. According to the Dictionary of Occupational

Titles ("DOT"),[4] interacting with people is not a significant part of the hand packager or assembler jobs. *See* DOT 920.587-018 (hand packager); DOT 712.687-010 (plastic hospital products assembler). Both of these jobs are classified as unskilled, Specific Vocational Preparation ("SVP") level 2. *See* DOT 920.587-018; DOT 712.687-010; SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (unskilled work corresponds to an SVP of 1 to 2). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). Plaintiff does not address or contest the relevance of these specific DOT materials.

Based on this information, the court concludes plaintiff would be capable of performing the hand packager and assembler jobs identified by the vocational expert, even if the ALJ had formulated an RFC with moderate social functioning limitations consistent with Dr. Bagner's opinion. *See McGarrah v. Colvin*, 650 F. App'x 480, 481 (9th Cir. 2016) (ALJ's failure to include limitation in hypothetical question was harmless error because plaintiff could perform two of the jobs identified by the vocational expert on the basis of the erroneous hypothetical question); *Gaston v. Comm'r*, 577 F. App'x 739, 742 (9th Cir. 2014) (same); *Carina T. v. Saul*, 2020 WL 2556355, at *3 (C.D. Cal. May 20, 2020) (same); *Peery v. Berryhill*, 2017 WL 1054181, at *4 (C.D. Cal. Mar. 20, 2017) (same). Thus, even if the ALJ erred in discounting Dr. Bagner's opinion, his error was harmless.

//

//

---

[4] The DOT is the agency's primary source for information about the requirements of work in the national economy. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 29, 2021

_____
SHERI PYM
United States Magistrate Judge